# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9027 | **DATE** | 5/14/2004 |
| **CASE TITLE** | International Sports Management vs. Stirling Bridge Group, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION DENYING DEFENDANTS' MOTION TO DISMISS COUNTS II-IV, VII, AND VIII OF THE AMENDED COMPLAINT [11-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 17 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 25 |
| ✓ | Copy to judge/magistrate judge. | | | |
| | TBK | courtroom deputy's initials | | date mailed notice |
| | | Date/time,received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| INTERNATIONAL SPORTS MANAGEMENT, Inc., an Illinois corporation, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 03 C 9027 |
| v. ) ) | Judge Mark Filip |
| STIRLING BRIDGE GROUP, INC., a Nevada corporation, KATHLEEN STOREN, LAURIE DIMAKOS, and LISA SCOTT, ) ) ) ) ) | |
| Defendants. ) | |

DOCKETED
MAY 17 2004

## MEMORANDUM OPINION DENYING DEFENDANTS' MOTION
## TO DISMISS COUNTS II-IV, VII, AND VIII OF THE AMENDED COMPLAINT

Plaintiff's first amended complaint contains eight counts, including one brought under the Federal Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* ("Lanham Act") (Count I), and seven counts brought under state law (Counts II through VIII). Defendants have moved to dismiss Counts II-IV, VII, and VIII on the basis that the Court lacks subject matter jurisdiction over these Counts. Alternatively, assuming that this Court finds that supplemental jurisdiction exists under 28 U.S.C. § 1367, Defendants request that the Court decline to exercise its supplemental jurisdiction over Counts II-IV, VII, and VIII. As explained below, Defendants' motion to dismiss is denied and the Court maintains jurisdiction over all asserted claims.

### BACKGROUND

Plaintiff International Sports Management ("ISM"), "a company that provides hospitality services to select corporate clientele at major sporting events," essentially alleges that three of its

25

former employees, Defendants Kathleen Storen, Laurie Dimakos, and Lisa Scott ("the individual Defendants"), "engaged in an orchestrated scheme to poach ISM's clients and start a competing company called Stirling Sports Group" ("Stirling"). (D.E. 1, ¶ 1). Stirling is also named as a Defendant.[1]

According to the allegations in the complaint—which must be accepted as true for present purposes—none of the individual Defendants had any of their own clients when they began work at ISM at various times in 2001 and 2002. Meanwhile, ISM has invested substantial resources in developing and maintaining its client base. In this regard, ISM has developed and keeps extensive information about its clients, including "inter alia, addresses and telephone numbers of company contacts, the name[s] of customer representatives, the types of services purchased over the course of the relationship, the event(s) preferred by the customer, past and current contracts with clients, and other information. This information is regularly updated by ISM and kept confidential." (*Id.*, ¶ 18).

The individual Defendants each entered into an employment agreement with ISM. Under the terms of these contracts, each individual Defendant agreed: (1) to use his or her "best efforts, skill and ability to promote the Company's interest during [his or] her employment," (*id.*, ¶ 27); (2) not to disclose ISM's confidential client information; (3) not to solicit ISM clients and prospective customers for a year after the Defendant's termination of his or her employment

---

[1] In their motion to dismiss, Defendants contend that "ISM did not allege a 'scheme' anywhere in the First Amended Complaint." (D.E. 19 at 7). However, not only did Plaintiff allege a "scheme," (D.E. 1, ¶ 1), and a "pattern of deceptive acts," (*see id.*, ¶ 2), in describing Defendants' alleged conduct, but, as the following summary of the allegations will show, even without these labels, it would be evident that Defendants' alleged conduct had a common design—namely, to obtain Plaintiff's clients and other business through unfair competitive methods.

relationship with ISM; and (4) not to recruit fellow employees or to induce them to leave ISM at any time during the Defendant's employment with ISM or for two years after the Defendant's termination of such employment.

Defendant Storen worked at Stirling and, in June 2003, she resigned from ISM. Storen then allegedly solicited Defendants Scott and Dimakos while those two still worked at ISM, and they "developed a plan to move to Stirling, taking as many ISM clients with them as possible." (*Id.*, ¶ 58). Before leaving ISM, Scott and Dimakos allegedly diverted business prospects to "the Stirling venture they planned to join." (*Id.*, ¶ 65). Scott resigned from ISM on Wednesday, November 12, 2003. Four days later, on Sunday, November 16, 2003, when all the other ISM employees were off for the weekend, Dimakos allegedly deleted ISM computer files and stole confidential ISM information from ISM's offices. That same day, Dimakos faxed her resignation letter to ISM's management.

After resigning from ISM, Scott and Dimakos immediately started working for Stirling. Upon joining Stirling, the individual Defendants all allegedly began soliciting ISM clients and employees. As part of that solicitation effort, Dimakos allegedly made disparaging comments about ISM to ISM clients to convince those clients to do business with Stirling. Additionally, Stirling has allegedly placed on its website purported testimonials from satisfied clients without disclosing that the testimonials were actually written to ISM by ISM's clients. According to Plaintiff, "[e]very reference or testimonial appearing anywhere on Stirling's website is inaccurate, false and has been stolen from ISM." (*Id.*, ¶ 97). Finally, according to Plaintiff, "Stirling has appropriated ISM's long time phone number, 780-0500. Stirling has added an '877' and made 877 780-0500 its own toll-free number." (*Id.*, ¶ 98). In sum, Plaintiff has alleged that

3

Defendants have engaged in a "deliberate scheme to steal ISM's employees, clients, information and even customer recommendations." (*Id.*, ¶ 97).

Counts I, V, and VI, are brought under the Lanham Act, the Illinois Consumer Fraud Act, and for unjust enrichment, respectively, and are primarily based on Stirling's alleged use on its website of ISM's customer testimonials. In the Lanham Act claim, Plaintiff alleges that "Stirling's false and misleading statements and advertising were made knowingly, willfully and with malicious intent to divert customers from ISM to Stirling." (*Id.*, ¶ 110). Counts II and IV are brought for breach of contract and breach of the duty of loyalty, respectively, and chiefly concern the individual Defendants having allegedly stolen ISM's confidential information, recruited ISM's employees to work for Stirling, and solicited ISM's clients and prospective clients for the benefit of Stirling. Count III, for intentional interference with existing and prospective business relationships and economic advantage against all Defendants, is mainly based on the same alleged misconduct as Counts II and IV. Count VIII, for violation of the Illinois Trade Secrets Act, is also brought against all Defendants and is essentially founded on the Defendants' alleged misappropriation of ISM's confidential information and use of that information to solicit ISM clients. Count VII, for commercial defamation against Stirling and Dimakos, principally relates to defamatory comments that Stirling and Dimakos allegedly made about ISM to ISM's current and potential clients. In Count VII, Plaintiff alleges that the "defamatory statements made by Stirling and Dimakos were made maliciously and with willful intent to destroy and/or irreparably damage ISM's standing with its current and prospective clients." (*Id.*, ¶ 152).

Plaintiff is seeking permanent injunctive relief (having already received an agreed order

4

of preliminary injunction in settlement of the preliminary injunction litigation—in which no Defendant admitted to any liability whatsoever), along with compensatory damages, statutory attorneys' fees and interest, statutory treble damages, and punitive damages.

## DISCUSSION

Defendant contends that this Court lacks supplemental jurisdiction over Counts II-IV, VII, and VIII because the issues involved in those state law claims are "wholly unrelated to ISM's federal Lanham Act claim." (D.E. 11 at 6). The Court respectfully disagrees.

The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), "confers supplemental jurisdiction to the limits Article III of the Constitution permits, authorizing federal courts to hear all claims that 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (quoting 28 U.S.C. § 1367(a)). Thus, "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts." *Id.* As explained by the Seventh Circuit, "[a] loose factual connection between the claims is generally sufficient." *Id.*

Supplemental jurisdiction exists in this case because all of the claims derive from a common nucleus of operative facts. Specifically, all of Plaintiff's claims concern Defendants' alleged "orchestrated scheme to poach ISM's clients and start a competing company called Stirling Sports Group." (D.E. 1 at 1). Plaintiff has alleged that the false advertising of the website quotes is part of this scheme: "Stirling has intentionally listed these quotes, with full knowledge they were deceptive and referred to ISM, in furtherance of its deliberate scheme to

steal ISM's employees, clients, information and even customer recommendations." (*Id.*, ¶ 97). In addition, and independently, if it can be proven that the alleged false advertising is in fact part of such an overall scheme, these circumstances would be relevant to establishing, as part of Plaintiff's Lanham Act claim, that "Stirling's false and misleading statements and advertising were made knowingly, willfully and with malicious intent to divert customers from ISM to Stirling." (*Id.*, ¶ 110). *See Alpo Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 967 (D.C. Cir. 1990) (stating that willfulness means "conduct aimed at a [particular] victim targeted by the defendant. . . . In the broader false-advertising context, 'willfulness' and 'bad faith' require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense"). Proof of such willfulness or malicious intent also can impact what remedies are available under the Lanham Act. *See* 15 U.S.C. § 1117(a); *see also BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994) ("The Lanham Act allows for fees in 'exceptional cases,' 15 U.S.C. § 1117(a), which encompasses cases in which the acts of infringement are malicious, fraudulent, deliberate or willful.") (internal quotation omitted).

Thus, inasmuch as all of the Counts are based on alleged conduct comprising part of this scheme, there is, at a minimum, a loose factual connection among the state law claims and the Lanham Act claim sufficient to confer jurisdiction over the state law claims. *See, e.g., Rothman v. Emory Univ.*, 123 F.3d 446, 454-55 (7th Cir. 1997) (holding that, where a plaintiff law student brought an action against his law school for disability discrimination, the court properly exercised supplemental jurisdiction over the law school's counterclaim to force plaintiff to repay the indebtedness on his student loans where the plaintiff claimed that he believed the law school's violation of the antidiscrimination laws relieved him of his loan responsibilities); *Lait v.*

6

*Genova*, No. 01 C 5125, 2001 WL 1249057, at *1 (N.D. Ill. Oct. 17, 2001) (holding that, where plaintiff sued various city officials for retaliating against him for cooperating with a federal investigation, the court had supplemental jurisdiction over a $50 state law extortion claim against the mayor's wife where it was "all part of a common scheme"). As a result, jurisdiction exists under 28 U.S.C. § 1367(a).

It being established that supplemental jurisdiction is available, the Court will turn to whether the exercise of such jurisdiction is appropriate. The supplemental jurisdiction statute provides that a district court may decline to exercise supplemental jurisdiction where

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In the event that conditions described in § 1367(c) are present, "a federal court must choose the course that 'best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine.'" *Centres, Inc. v. Town of Brookfield, Wisc.*, 148 F.3d 699, 704 (7th Cir. 1998) (quoting *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172-73 (1997) (internal quotation omitted)).

Regardless of whether circumstances described in § 1367(c) may exist in this case, and it is not clear that any do, it would not be proper for the Court to decline jurisdiction over the state claims because doing so would not serve the governing principles articulated by the Seventh Circuit and Supreme Court. It would neither be efficient nor convenient to require the parties to litigate the same issues relating to the same alleged scheme before two different judges. Indeed, it is entirely conceivable that if part of this case is dismissed and refiled in state court, one or

both of the judges presiding over aspects of this case will be faced with a motion to stay proceedings pending the outcome of the related litigation. At the same time, the principle of comity does not weigh particularly heavily in favor of dismissal, because no difficult or complex state law question has been identified. There seems little reason to burden the judicial systems of both state and federal courts with a piecemeal litigation of this case, as it can most economically and conveniently be litigated here. Accordingly, the Court will retain jurisdiction over all claims asserted in the complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts II-IV, VII, and VIII is denied.

*[signature]*

Mark Filip
United States District Judge
Northern District of Illinois

Enter: May 14, 2004